LOWE et al., Appellees,

v.

**SUN REFINING & MARKETING COMPANY et al., Appellants.**

[Cite as *Lowe v. Sun Refining & Marketing Co.* (1992), 73 Ohio App.3d 563.]

Court of Appeals of Ohio,
Lucas County.

No. L–91–024.

Decided Feb. 21, 1992.

*Robert D. Gary, Joseph F. Albrechta* and *James T. Murray*, for appellees.

*James R. Jeffery, Joan C. Szuberla, James H. Manning* and *Jeffrey W. Wagner*, for appellants.

---

MELVIN L. RESNICK, Judge.

On December 17, 1990, the Lucas County Court of Common Pleas granted plaintiffs-appellees' motion, made pursuant to Civ.R. 23,[1] for certification as a class action. Defendants-appellants, Sun Refining & Marketing Company and Sun Pipeline Company, timely appeal that judgment and set forth the following assignments of error:

"1. The court below erred and abused its discretion in certifying a class, many of whose members would have no legal basis for recovery.

"2. The court below erred and abused its discretion in certifying a class which is unidentifiable, lacks commonality, would be unmanageable and which is not superior to other methods of adjudicating the matters at issue."

This cause arises from the following facts. On February 17, 1988, an underground pipeline, operated and maintained by Sun Refining & Marketing Company, ruptured and spilled a toxic petroleum product known as toluene into the Sugar Creek in Seneca County. Sun Pipeline Company owned the toluene which was being carried through the pipe. The toluene eventually spread into the Sandusky River. As a result of the spill, several hundred residents living near the affected waterways were evacuated and the businesses in those areas were closed. A water alert was issued in the city of

---

1. Civ.R. 23 provides, in pertinent part:

"(A) Prerequisites to a class action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

"(B) Class actions maintainable. An action may be maintained as a class action if the prerequisites of subdivision (A) are satisfied, and in addition:
"* * *

"(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (a) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (d) the difficulties likely to be encountered in the management of a class action."

Fremont, Sandusky County, Ohio. Shortly after the spill, appellants' insurer announced a procedure under which residents and businesses could submit claims for damages resulting from the spill. Under this plan, affected residents qualified for compensation of "any personal lodging, meals or replacement transportation" expenses, and affected employees and businesses qualified for compensation of "wages and income." As of August 31, 1990, six thousand two hundred forty claims were paid; the claims procedure remained in place at the time of the hearing on the motion for certification.

This class action suit against appellants commenced in 1988. A first amended complaint filed on July 11, 1989, lists fourteen named plaintiffs who allegedly suffered economic and/or personal injury as a consequence of the toluene spill. Plaintiffs-appellees' causes of action are based upon negligence, nuisance, trespass and strict liability. Several defendants, including appellants, are named and answered the complaint. None of the other named defendants are parties to this appeal.

Appellees' motion to certify was also filed on July 11, 1989. On July 25, 1989, appellants filed a motion for partial dismissal of appellees' first amended complaint. The motion requested that the trial court dismiss all claims stated in the first amended complaint except for the claim of negligence. Appellants and a third named defendant, O.H. Materials Corporation, further filed a joint motion to strike the class action allegations of appellees.

An evidentiary hearing was held on the motion for certification and joint motion to strike on October 30, 1990. On December 17, 1990, the trial court certified this cause as a class action and defined the class as:

"A. Individuals residing in the Sandusky River Water Shed who, as a direct result of the toluene spill complained of, have suffered injury or damage in one or more of the following particulars:

"(i) evacuation of their domestic residences or other deprivation of the full and normal use of their domestic residences;

"(ii) temporary deprivation or interference with the ability to fully use and/or consume the normal and usual source of water supply to their domestic residences;

"(iii) out-of-pocket expenses directly caused by evacuation of their domestic residences or other deprivation of the full and normal use of their domestic residences;

"(iv) loss of income caused by the temporary interruption or cessation of their ability to work and earn income;

"(v) individuals who[, during the period of February 17, 1988 through February 19, 1988,] were living or otherwise located in a geographic area near

enough to the spill to have had sufficient contact or exposure to the toluene fumes to cause such individuals non-permanent physical injury, including, but not limited to, eye, ear, nose, throat and/or skin irritation; nausea; vomiting; headaches; and/or respiratory distress;

"(vi) individuals who incurred out-of-pocket expenses for medical examinations, testing, care, diagnosis or treatment, directly related to their inhalation of or other physical exposure to toluene or its chemical components and who experienced no signs, symptoms or other conditions as a result of such exposure beyond ninety (90) days after the date of the occurrence which is the subject of this lawsuit.

"B. Sole proprietorships, partnerships, corporations, or other business concerns operating within the Sandusky River Shed who, as a direct result of the toluene spill complained of, were forced to cease normal business operations for not less than four (4) consecutive hours and who:

"(i) suffered lost income as a result of such cessation of normal business operations; or

"(ii) incurred out-of-pocket expenses directly related to such cessation of normal business operations."

The court also denied appellants' motion for a partial dismissal of the first amended complaint on December 17, 1990.

Appellants in their first assignment of error, ask this court, in essence, to review the trial court's denial of their motion for partial dismissal. That is, appellants assert that appellees have no basis for recovery under the legal theories of nuisance, trespass and strict liability and, in their brief, explore the merits of these claims. Appellants conclude that the trial court abused its discretion in permitting the class action to proceed under any theory other than negligence.

■ It is well settled that the denial of a motion to dismiss is not a final appealable order. *Gen. Elec. Supply Co. v. Warden Elec., Inc.* (1988), 38 Ohio St.3d 378, 528 N.E.2d 195, syllabus. Therefore, appellants cannot raise any error with regard to the merits of the lower court's order on its motion for partial dismissal in their appeal of the certification issue. Thus, while the nature of appellees' claims may be discussed at some point during our consideration of the sole issue, certification as a class action, before this court, we cannot and will not address the merits of those claims. *Ojalvo v. Bd. of Trustees of Ohio State Univ.* (1984), 12 Ohio St.3d 230, 232, 12 OBR 313, 315, 466 N.E.2d 875, 877. For these reasons, the subject matter of appellants' first assignment of error cannot be considered by this court and the same is, hereby, found not well taken.

In their second assignment of error, appellants contend that the trial court abused its discretion in certifying the instant case as a class action.

The determination of whether an action should be certified as a class action is left to the discretion of the trial court. *Marks v. C.P. Chem. Co.* (1987), 31 Ohio St.3d 200, 31 OBR 398, 509 N.E.2d 1249, syllabus. On appeal, we will not reverse the trial court's decision unless there is a showing of an abuse of that discretion. *Id.* An abuse of discretion is evidenced by more than an error of law or judgment. It reflects an attitude of the court which is unreasonable, arbitrary or unconscionable. *Id.* at 201, 31 OBR at 398, 509 N.E.2d at 1252; *Ojalvo, supra,* at 232, 12 OBR at 315, 466 N.E.2d at 877.

In order to be certified as a class action, a case must meet seven requirements, two of which are implicitly required by Civ.R. 23 and five others which are expressly set forth therein. *Warner v. Waste Mgt., Inc.* (1988), 36 Ohio St.3d 91, 521 N.E.2d 1091, paragraph one of the syllabus. Failure to satisfy any one of the requirements results in a denial of certification. *Id.* at 94, 521 N.E.2d at 1094. The two implicit requirements are (1) that the class be identifiable and that the definition of the class be unambiguous; and (2) the class representative(s) must be a member or members of the class. Four of the explicit requirements are set forth in Civ.R. 23(A). They are: (1) numerosity, *i.e.,* the class is so numerous that joinder of all members is impracticable; (2) commonality, *i.e.,* there are questions of law or fact common to the class; (3) typicality, *i.e.,* the claims or defenses of the representatives are typical of the claims or defenses of the class; and (4) the representatives will fairly and adequately protect the interest of the class. *Id.* at 97, 521 N.E.2d at 1097. The analysis under this last requirement is divided into a consideration of the adequacy of the representative(s) and the adequacy of counsel. *Id.* at 95, 521 N.E.2d at 1095. The final requirement is a determination of whether one of the three Civ.R. 23(B) requirements is met. *Id.* at 94, 521 N.E.2d at 1094. In the instant case, appellees sought and obtained class certification under Civ.R. 23(B)(3). In *Warner, supra,* at 96, 521 N.E.2d at 1095–1096, the Supreme Court of Ohio held that qualification as a class action under this provision required the following two findings: "that the common questions predominate over questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

Thus, under Civ.R. 23(B)(3) the issues of predominance of common questions and the superiority of a class action over separate actions must be resolved in favor of appellees.

Appellants address only three of the seven requisites set forth in *Warner, supra,* in their second assignment of error and appellate brief. Appellants

maintain that the class certified by the lower court is unidentifiable, lacks commonality, and does not satisfy the requisites of Civ.R. 23(B)(3) as to predominance and superiority. Thus, this court may disregard any error not assigned or argued by appellants as to the other four requirements. App.R. 12(A). After a review of the record and because we find no error in the trial court's rulings related to numerosity, typicality, adequacy of the representatives and counsel, and the determination that the representatives are members of the class, we shall not address these issues in this decision and adopt the trial court's judgment on the same. See Appendix A.

Appellants first complain that the class certified by the court below is unidentifiable because the geographic area, the Sandusky River Watershed, which is used to set the geographic parameters of the class, is imprecise and is, therefore, ambiguous. Appellants further assert that the "subclasses" certified by the trial court are ambiguous because the members of the subclasses are not readily identifiable.

The *Warner* court provided examples of classes, *e.g.*, "all people active in the peace movement," which are ambiguous because they are too amorphous to permit identification of all class members through the exercise of reasonable effort. *Id.*, 36 Ohio St.3d at 96, 521 N.E.2d at 1096. In this case, the "Sandusky River Watershed" is not an amorphous or ambiguous description of the geographic area occupied by potential class members. A "watershed" is defined as:

" * * * 1: WATER PARTING  2: a region or area bounded peripherally by a water parting and draining ultimately to a particular watercourse or body of water[.]  * * *"  Webster's Ninth New Collegiate Dictionary (1990) 1333.

A "water parting" is a "summit or boundary line separating the drainage districts of two streams or coasts." *Id.* at 1332. In water law, the term "watershed" is synonymous with the term "drainage basin" and is the area abutting and draining into a particular body of water, *i.e.*, a lake or a stream. *Anaheim Union Water Co. v. Fuller* (1907), 150 Cal. 327, 88 P. 978. See, generally, Boyer, Survey of the Law of Property (3 Ed.1981) 287; 78 American Jurisprudence 2d (1975) 715, Waters, Section 270. In this case, appellees presented maps and deposition testimony which delineated the Sandusky River Watershed or drainage basin. This geographical area is not imprecise. Rather, it is a specific land area which drains into the Sandusky River, the major tributary affected by the toluene spill. Moreover, the court below set specific limitations as to the persons residing or doing business in the watershed who could qualify as class members. These limitations, for example, those who lost full use of their residence as a result of the toluene spill, can be identified through reasonable efforts. As noted by the trial court, city directories,

Fremont water customer lists, the list compiled by appellants' own insurance company of those who filed claims, maps and telephone directories will aid the parties and the court in readily determining the members of the class. We, therefore, conclude that the class, as certified, is not ambiguous or unidentifiable.

■ Pursuant to Civ.R. 23(A)(2), a class action can be maintained only where "there are questions of law or fact common to the class." Appellants assert that this commonality requirement is not met because the toluene spill affected persons living in the Sandusky River Watershed differently and that proximate cause, liability and damages will have to be determined on an individual-by-individual basis.

■ Generally, courts give the requirement of commonality under Civ.R. 23(A)(2) a permissive application. *Marks, supra*, 31 Ohio St.3d at 202, 31 OBR at 399, 509 N.E.2d at 1252. Therefore, although different factual and legal issues may be involved in a particular case, these differences do not enter into the certification analysis until the court considers the Civ.R. 23(B)(3) requirements of predominance and superiority. *Id.*, at 202, 31 OBR at 399, 509 N.E.2d at 1252. Commonality is satisfied if there is a "common nucleus of operative facts," *Warner, supra*, 36 Ohio St.3d at 97, 521 N.E.2d at 1097, *or* there are legal issues common to the class, *Miles v. N.J. Motors* (1972), 32 Ohio App.2d 350, 61 O.O.2d 518, 291 N.E.2d 758.

" 'If there is a common liability issue, [Fed.R.Civ.P.] 23(a)(2) is satisfied. Similarly if there is a *common fact question* relating to negligence, or the existence of a contract or its breach, or a practice of discrimination, or misrepresentation, or conspiracy, or *pollution*, or the existence of a particular course of conduct, the Rule is satisfied. Typically, the subdivision (a)(2) requirement is met without difficulty for the parties and very little time need be expended on it by the * * * judge.' " (Emphasis added.) *Warner, supra*, 36 Ohio St.3d at 97, 521 N.E.2d at 1097, quoting Miller, An Overview of Federal Class Actions: Past, Present and Future (2 Ed.1977), at 24.

Appellants' arguments as to the commonality requirement disregard the fact that this requisite can be satisfied either by a showing of a common nucleus of operative facts from which the asserted claims arise *or* by establishing the existence of legal questions common to the class. A common nucleus of operative facts was demonstrated by appellees. Their complaint alleges that all damages were incurred as the result of one incident, the toluene spill on February 17, 1988. Thus, the requirement of Civ.R. 23(A)(3) is satisfied because this single incident of pollution forms the basis for all of appellees' claims.

██ Finally, appellants maintain that the trial court abused its discretion in certifying this case as a class action because the requisites of Civ.R. 23(B)(3) are not met. Specifically, appellants contend that appellees failed to establish that common questions predominate over questions affecting only individual members, and that a class action is superior to other available methods for a just and efficient adjudication of the controversy.

Civ.R. 23(B)(3) is frequently categorized as a vehicle for the maintenance of a class action in which damages are sought. *Warner, supra,* 36 Ohio St.3d at 96, 521 N.E.2d at 1096. The Staff Notes to Civ.R. 23 observe that "[s]ubdivision (B)(3) deals with fact patterns in which the class action is not so clearly called for, such as a mass accident involving injuries to numerous persons * * *." In the past, plaintiffs injured as the result of an alleged mass tort were denied class certification because it was widely believed that individual questions, especially as to proximate cause, predominated over common questions and raised serious doubts as to the superiority of the class action form. 3 Newburg on Class Actions (2 Ed.1985), Section 17.02. Nonetheless, in recent years, cases founded upon mass accidents, and/or mass toxic torts are increasingly favored by courts and have been certified as class actions. Newburg, *supra,* Section 17.16. See, *e.g., Warner, supra* (mass toxic tort); *Reynolds v. CSX Transp., Inc.* (1989), 55 Ohio App.3d 19, 561 N.E.2d 1047 (mass accident/toxic tort). Therefore, the fact that this case arises from an alleged mass accident/toxic tort does not automatically preclude its certification as a class action under Civ.R. 23(B)(3). Instead, the question before us is whether common questions of law and fact represent a significant aspect of the class in this case and whether these questions are capable of resolution for all members of the class in a single adjudication. *Schmidt v. Avco Corp.* (1984), 15 Ohio St.3d 310, 315, 15 OBR 439, 443, 473 N.E.2d 822, 826. It further involves an evaluation of the other procedures available to the putative class members in order to ascertain whether the judicial energy and time needed to determine a class action are justified. *Id.*

This case is predicated upon a question common to all members of the class, to wit: Did the conduct of appellants impact on all members of the class? All four of appellees' claims relate to this question and the proof of that impact, *i.e.,* causation, is common to all members of the class. In *Sterling v. Velsicol Chem. Corp.* (C.A.6,1988), 855 F.2d 1188, a class action was instituted by persons allegedly injured by drinking well water contaminated with chemical waste and/or whose property was damaged by the contaminated water. The four claims (negligence, strict liability, nuisance and trespass) raised in *Sterling* were identical to those raised in this case. The *Sterling* court opined at 1197:

"In mass tort accidents, the factual and legal issues of a defendant's liability do not differ dramatically from one plaintiff to the next. No matter how individualized the issue of damages may be, these issues may be reserved for individual treatment with the question of liability tried as a class action. Consequently, the mere fact that questions peculiar to each individual member of the class remain after the common questions of the defendant's liability have been resolved does not dictate the conclusion that a class action is impermissible.

" * * *

" * * * [W]here the defendant's liability can be determined on a class-wide basis because the cause of the disaster is a single course of conduct which is identical for each of the plaintiffs, a class action may be the best suited vehicle to resolve such a controversy."

Similarly, in *Warner, supra,* a toxic tort case, the plaintiffs set forth the same bases for recovery as in this case. Although the *Warner* court expressed reservations as to the predominance of common questions and the manageability of that class action, the trial court's certification of the class in *Warner* was upheld (with certain modifications). In *Warner, supra,* 36 Ohio St.3d at 97, 521 N.E.2d at 1097, the Supreme Court of Ohio suggested that, upon remand, " * * * the trial court should strongly consider bifurcation as to the actions on liability, to be followed by individual actions on damages."

In the instant case, the court below considered the evidence before it and certified a class which included several subclasses. These classes can be grouped as to type of loss and questions common to that subclass predominate over any individual questions. For example, subclasses (A)(i), (A)(ii) and (A)(iii) consist of a class whose recovery relies on the determination of such questions as whether, due to the toluene spill, the property of the members of this subclass was affected to the extent that they lost the beneficial use and enjoyment of that property in one way or another. Once liability is established to this subclass as a whole, the issue of varying damages can be determined on an individual basis. Clearly, causation is a question common to all members of this subclass. In addition the claims of many of the members of this subclass, as well as the members of the other subclasses, are such that these claims would not be pursued individually because the cost of instituting an individual action would outweigh any benefit received from prevailing in that cause of action. See *Wehner v. Syntex Corp.* (N.D.Cal.1987), 117 F.R.D. 641, 645 (dioxin contamination); *Pruitt v. Allied Chem. Corp.* (E.D.Va.1980), 85 F.R.D. 100, 115 (kepone pollution); *Desario v. Indus. Excess Landfill, Inc.* (1991), 68 Ohio App.3d 117, 587 N.E.2d 454 (toxic chemical leak).

As to the alleged personal injuries, appellants emphasize the fact that proximate cause of these injuries will necessitate separate proof by each member of the class/subclass as to that cause and will thereby create individual rather than common questions. We disagree. Identical evidence will be required to establish the level and duration of the toluene contamination and the causal connection, if any, between exposure to or consumption of toluene-contaminated water and the type of injuries allegedly suffered. *Sterling, supra,* 855 F.2d at 1197. The only distinguishing issue in the personal injury subclass is the nature and amount of damages. Again, bifurcation can be employed by the trial court to individualize these damage claims. The benefits of proceeding as a class action to prevent duplication of evidence, conserve judicial resources and provide individuals with lesser claims access to judicial disposition of those claims outweighs any benefit which could be derived from other methods of adjudication.

In sum, the trial court has avoided many of the difficulties encountered in mass tort class actions by certifying a class consisting of several subclasses which are subject to common questions. Moreover, this single action is superior, in terms of both judicial economy and matters of proof, to a series of individual causes of action. Adjudication in a single action permits fair judicial treatment of all claims, regardless of size, and prevents inconsistent results. The claims procedure offered by appellants' insurance company is insufficient because it provides only for compensatory damages based upon economic loss. Difficulties in the management of the class, particularly in the area of personal injury, can be cured by severance, *Wehner, supra,* and bifurcation, *Warner, supra.*

Accordingly, the trial court did not abuse its discretion in certifying this cause as a class action.

Appellants further assert that the trial court's judgment entry indicates that the class in this case will be a typical Civ.R. 23(B)(3) "opt out" class. That is, all class members identified through reasonable efforts and duly notified shall be parties to this cause unless a particular individual takes affirmative action and elects to exclude himself or herself from the class. Civ.R. 23(C)(2). Appellants contend that the putative class members in this case must be required to "opt in" the class by filing a deposit with the court and supplying detailed information relative to his/her claim before being included in the class. A review of the trial court's judgment entry, see Appendix B, discloses that the lower court followed the strictures of Civ.R. 23(C)(2), which mandates that members of a Civ.R. 23(B)(3) class receive a specific form of notice. Nevertheless, there is no order as to the form of notice to be employed in this case or as to the publication of that notice. In its

entry, the court simply directs appellees to submit a proposed notice to the class and proposed methods of identifying and notifying class members. These proposals are expressly made subject to court approval. Thus, no order regarding the type of notice, identification and notification is part of the record in this appeal. Any consideration of appellant's assertions regarding the same would be, therefore, advisory and premature. Accordingly, we cannot and will not consider appellant's arguments as to notice to the class.

For the foregoing reasons, appellants' second assignment of error is found not well taken.

*Judgment affirmed.*

GLASSER and ABOOD, JJ., concur.

APPENDIX A

WILLIAM J. SKOW, J.

This case is before the court on two motions: (1) joint motion to strike class action allegations filed by defendants Sun Refining & Marketing Company, Sun Pipe Line Company and O.H. Materials Corporation, and (2) plaintiffs' motion for class certification. Upon consideration of the pleadings, depositions, affidavits, exhibits and written arguments of counsel, plaintiffs' motion for class certification is found well taken and is granted as to a modified class, while defendants' motion is found not well taken and is denied.

I

Statement of Facts

On February 17, 1988, a pipeline carrying the chemical toluene ruptured in Seneca County, Ohio, causing damages to nearby residents. Defendant Sun Pipe Line Company ("SPL") admitted that it maintained and operated the pipeline, and defendant Sun Refining & Marketing Company ("SRM") admitted it owned the toluene. Within two days of the spill, SPL and SRM established claims procedure to reimburse individuals and businesses for resulting losses.

Subsequently, plaintiffs filed the instant class action against moving defendants, among others, claiming causes of action against SRM and SPL in negligence, trespass, nuisance, and strict liability. Plaintiffs also alleged that defendant O.H. Materials Corporation was negligent in its attempts to stop, diminish, contain, and/or clean up the spillage.

## II

## Standard for Class Certification

A case can be certified as a class action if the court determines that seven elements of a class action have been met. *Warner v. Waste Mgt., Inc.* (1988), 36 Ohio St.3d 91, 521 N.E.2d 1091, paragraph one of the syllabus. The *Warner* court stated that two implied requirements are that the class must be identifiable before certification and that the class representative must be a member of the class. *Id.* at 96, 521 N.E.2d at 1096. Civ.R. 23(A) sets forth the following four requirements which must be met for a case to be certified:

" * * * (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class."

Finally, the last element for a case to be certified as a class action is that one of the requirements under Civ.R. 23(B)(1), (2) or (3) must be fulfilled. *Warner, supra,* at 94, 521 N.E.2d at 1094.

## III

## Discussion

In the instant case, plaintiffs have moved that the following class be certified:

A. Individuals residing in the Sandusky River Water Shed who, as a direct result of the toluene spill complained of, have suffered injury or damage in one or more of the following particulars:

(i) evacuation of their domestic residences or other deprivation of the full and normal use of their domestic residences;

(ii) temporary deprivation or interference with the ability to fully use and/or consume the normal and usual source of water supply to their domestic residences;

(iii) out-of-pocket expenses directly caused by evacuation of their domestic residences or other deprivation of the full and normal use of their domestic residences;

(iv) loss of income caused by the temporary interruption or cessation of their ability to work and earn income;

(v) individuals who were living or otherwise located in a geographic area near enough to the spill to have had sufficient contact or exposure to the toluene fumes to cause such individuals non-permanent physical

injury, including, but not limited to, eye, ear, nose, throat and/or skin irritation; nausea; vomiting; headaches; and/or respiratory distress;

(vi) individuals who incurred out-of-pocket expenses for medical examinations, testing, care, diagnosis or treatment, directly related to their inhalation of or other physical exposure to toluene or its chemical components and who experienced no signs, symptoms or other conditions as a result of such exposure beyond ninety (90) days after the date of the occurrence which is the subject of this lawsuit.

B. Sole proprietorships, partnerships, corporations, or other business concerns operating within the Sandusky River Water Shed who, as a direct result of the toluene spill complained of, were forced to cease normal business operations for not less than four (4) consecutive hours and who:

(i) suffered lost income as a result of such cessation of normal business operations; or

(ii) incurred out-of-pocket expenses directly related to such cessation of normal business operations.

The issue before this court is whether such class meets the seven elements set forth in *Warner*.

1. Identifiable class.

The general contours of the class should be sufficiently delineated so that it would be feasible for the court to ascertain whether particular individuals are or are not members of it. This court finds that the class is identifiable, as modified below, through various means, including but not necessarily limited to city directories, real estate records, computerized lists of water customers, maps, telephone directories, and the list of those reimbursed by SRM and SPL.

Under section A.(v) of the class definition, plaintiffs seek to include injured "individuals who were living or otherwise located" in the geographic area of the spill. Under *Warner*, such a class is not readily identifiable. *Id.*, 36 Ohio St.3d at 96, 521 N.E.2d at 1096. Therefore, section A.(v) must be modified to read as follows:

"(v) individuals who, *during the period of February 17, 1988 through February 19, 1988,* were living or otherwise located in a geographic area near enough to the spill to have had sufficient contact or exposure to the toluene fumes to cause such individuals non-permanent physical injury, including, but not limited to, eye, ear, nose, throat and/skin irritation; nausea; vomiting; headaches; and/or respiratory distress[.]" (Emphasis added to reflect change.)

2. Class representatives must be members of the proposed class.

The court finds that the plaintiffs in the instant action are residents within the geographic boundaries of the proposed class and, accordingly, finds that the plaintiffs have met their burden with regard to this requirement.

3. Numerosity.

The proposed class is so numerous that joinder of all members is impractical. Based on the deposition of Eileen Gabel, an employee of the Fremont Water Department, there are approximately 6,200 water customers of the city of Fremont who were impacted by the alleged toluene spill. Further, SRM and SPL, as of September 21, 1989, had processed 6,235 claims for damages as stated in their answer to plaintiffs' interrogatory No. 8.

4. Commonality.

If there is a common liability issue or a common fact question relating to negligence, pollution, or the existence of particular course of conduct, Civ.R. 23(a)(2) is satisfied. *Warner*, 36 Ohio St.3d at 97, 521 N.E.2d at 1097. The common operative fact in the case *sub judice* was the alleged toluene spill on February 17, 1988. It is alleged that this single event was the cause of all damages incurred by members of the proposed class. Additionally, questions of law common to the class will be present with respect to any duties owed by the defendants to the class members. Thus, plaintiffs have met their burden with respect to this requirement.

5. Typicality

Typicality is often tested in terms of a lack of antagonism among the claims and defenses of the representatives and those of the class members. There is no evidence in this case of conflict between the representatives and the class so this requirement is also satisfied. *Warner*, 36 Ohio St.3d at 98, 521 N.E.2d at 1098.

6. Adequacy of representation.

A representative is deemed adequate so long as his interest is not antagonistic to that of the other class members. *Warner*, 36 Ohio St.3d at 98, 521 N.E.2d at 1098. The court finds, based on the evidence before it, that the class members will fairly and adequately protect the interests of the class. Additionally, the court finds that legal counsel for the plaintiffs have sufficient experience, skill and competency to handle the class action. The affidavits attached to plaintiffs' motion demonstrates clearly the experience and expertise of plaintiffs' counsel in this type of action.

7. Civ.R. 23(B) requirements.

The court finds that Civ.R. 23(B)(3) is applicable to this action. Thus, the court additionally finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members of the class and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The court further finds that the primary issue in the case at bar of defendants' liability for damages arising out of the toluene spill outweighs the individual issues, such as damages, and that a class action would be superior. Therefore, the Civ.R. 23(B) requirements are also satisfied.

In summary, this court finds that plaintiffs have satisfied the seven prerequisites set forth in *Warner.* Accordingly, plaintiffs' motion for class certification is granted and the class, as modified, shall be certified.

*Motion granted.*

APPENDIX B

Judgment Entry

It is hereby ORDERED, ADJUDGED and DECREED that the moving defendants' motion to strike class action allegations is found not well taken and is denied.

It is further ORDERED that plaintiffs' motion for class certification is found well taken and granted, there being no just reason for delay.

It is further ORDERED that the class shall be defined as follows:

A. Individuals residing in the Sandusky River Water Shed who, as a direct result of the toluene spill complained of, have suffered injury or damage in one or more of the following particulars:

    (i) evacuation of their domestic residences or other deprivation of the full and normal use of their domestic residences;

    (ii) temporary deprivation or interference with the ability to fully use and/or consume the normal and usual source of water supply to their domestic residences;

    (iii) out-of-pocket expenses directly caused by evacuation of their domestic residences or other deprivation of the full and normal use of their domestic residences;

    (iv) loss of income caused by the temporary interruption or cessation of their ability to work and earn income;

    (v) individuals who, during the period of February 17, 1988 through February 19, 1988, were living or otherwise located in a geographic area near enough to the spill to have had sufficient contact or exposure to the

toluene fumes to cause such individuals non-permanent physical injury, including, but not limited to, eye, ear, nose, throat and/or skin irritation; nausea; vomiting; headaches; and/or respiratory distress;

(vi) individuals who incurred out-of-pocket expenses for medical examinations, testing, care, diagnosis or treatment, directly related to their inhalation of or other physical exposure to toluene or its chemical components and who experienced no signs, symptoms or other conditions as a result of such exposure beyond ninety (90) days after the date of the occurrence which is the subject of this lawsuit.

B. Sole proprietorships, partnerships, corporations, or other business concerns operating within the Sandusky River Water Shed who, as a direct result of the toluene spill complained of, were forced to cease normal business operations for not less than four (4) consecutive hours and who:

(i) suffered lost income as a result of such cessation of normal business operations; or

(ii) incurred out-of-pocket expenses directly related to such cessation of normal business operations.

It is further ORDERED that no later than the 1st day of February, 1991, plaintiffs submit for approval by this court a notice to class members of this determination which shall contain such information as required in Civ.R. 23(C)(2).

It is further ORDERED that said notice be sent by ordinary mail to all class members who can be identified through reasonable effort.

It is further ORDERED that notice by publication shall be employed for those class members who cannot be identified through reasonable effort.

It is further ORDERED that no later than the 1st day of February, 1991, plaintiffs submit for approval by this court a workable plan for identifying the individual names and addresses of all class members as well as a workable plan for publication of said notice.

It is further ORDERED that upon completion of service of notice, plaintiffs shall file affidavits attesting to compliance with the terms of this order.