{¶ 27} I respectfully dissent from the majority opinion. For the reasons adduced below, I would modify the order granting class certification, affirm the order as modified, and remand the matter for further proceedings.
 {¶ 28} Because the majority opinion is limited to Roto-Rooter's second assignment of error, I shall address it at the outset. Roto-Rooter's second assignment of error provides:
 {¶ 29} "The trial court abused its discretion in finding common questions of fact predominate over individual ones."
 {¶ 30} This action is based on an alleged profit-making scheme in which Roto-Rooter added a miscellaneous supplies charge to its invoices which allegedly bore no relation to supplies that were used in servicing its customers. Linn asserts that the charge was really implemented to boost Roto-Rooter's profits and to increase the pay of its technicians. The claims raised by Linn for fraudulent misrepresentation, fraudulent concealment, unjust enrichment, and violations of the CSPA relate to Roto-Rooter's improper use of the standardized charge.
 {¶ 31} I disagree with the majority's conclusion that proof of the alleged scheme is dependent upon factors specific to each transaction. The evidence presented in support of class certification reflected that Roto-Rooter did not keep individual records of the miscellaneous supplies used, but instead tracked profits attributable to the charge. Roto-Rooter implemented this charge on a class-wide basis, the nature of the charge was represented on a class-wide basis, and the profits derived from the charge were tracked on a class-wide basis.
 {¶ 32} As found by the trial court, the standardized procedure in this case was that "an identical form was used for every customer and Roto-Rooter did not track the cost of `miscellaneous supplies,' but rather tracked the profit attributable to the charge." The trial court further noted the essence of the claim was that "[c]lass members were charged the same regardless of actual supplies used. Roto-Rooter kept no records of such supplies used and instead tracked profits attributable to the charge."
 {¶ 33} I do not believe that the trial court abused its discretion in finding common questions of fact predominate. Ohio courts have consistently certified classes of plaintiffs alleging deceit or fraudulent acts arising from the use of standardized form contracts or routine procedures. See Pyles v. Johnson,143 Ohio App.3d 720, 2001-Ohio-2478; Baughman v. State Farm Mut.Auto. Ins. Co., 88 Ohio St.3d 480, 2000-Ohio-397; Cope v.Metropolitan Life Ins. Co. (1998), 82 Ohio St.3d 426; Hamiltonv. Ohio Savings Bank (1998), 82 Ohio St.3d 67, 1998-Ohio-365.
 {¶ 34} In Hamilton, 82 Ohio St.3d at 80, the court found common questions of law and fact predominated where the claims arose from identical or similar form contracts stating "[t]he gravamen of every complaint within each subclass is the same and relates to the use of standardized procedures and practices." InCope, 82 Ohio St.3d at 426, the court ruled in favor of class certification stating "we cannot imagine a case more suited for class action treatment than this one. This case involves the use of form documents, standardized practices and procedures, common omissions spelled out in written contracts, and allegations of a widespread scheme to circumvent statutory and regulatory disclosure requirements, any one of which has been held to warrant class action treatment." As further stated by the court in Cope:
"`Frequently numerous consumers are exposed to the samedubious practice by the same seller so that proof of theprevalence of the practice as to one consumer would provide prooffor all. Individual actions by each of the defrauded consumers isoften impracticable because the amount of individual recoverywould be insufficient to justify bringing a separate action; thusan unscrupulous seller retains the benefits of its wrongfulconduct. A class action by consumers produces several salutaryby-products, including a therapeutic effect upon those sellerswho indulge in fraudulent practices, aid to legitimate businessenterprises by curtailing illegitimate competition, and avoidanceto the judicial process of the burden of multiple litigationinvolving identical claims. The benefit to the parties and thecourts would, in many circumstances, be substantial.' [Vasquezv. Superior Court of San Joaquin Cty. (1971), 4 Cal.3d 800,808, 484 P.2d 964, 968-969.]
 "It is now well established that `a claim will meet thepredominance requirement when there exists generalized evidencewhich proves or disproves an element on a simultaneous,class-wide basis, since such proof obviates the need to examineeach class member's individual position.' Lockwood Motors, Inc.v. Gen. Motors Corp. (D.Minn. 1995), 162 F.R.D. 569, 580."
 {¶ 35} This case involves a standard charge and common practices applied across the entire class. Further, there are common claims of fraudulent misrepresentation, fraudulent concealment, unjust enrichment, and violations of the CSPA. Common evidence will be required to establish that Roto-Rooter implemented the miscellaneous supplies charge as a profit scheme and that the charge was not related to the miscellaneous supplies that were used. As we found in Washington v. Spitzer, Cuyahoga App. No. 81612, 2003-Ohio-1735:
"Here, as the trial court found, `the common questions of lawand fact arise from the same form `buyer's agreement' with thepre-printed charge. The essence of each putative class member'scomplaint is the same and relates to the alleged improper chargemade by Spitzer.' Appellees allege a common scheme that can beproven through the use of form documents and standardizedprocedures, thus demonstrating a factual commonality among classmembers. Accordingly, the fact that some individual evidence willneed to be gathered regarding each transaction does not precludea finding that common questions predominate."
 {¶ 36} Insofar as Roto-Rooter claims that liability and damage issues will require individual proof about supplies which were used, Roto-Rooter admits that it did not keep records of the miscellaneous supplies which were used on a given job. However, Roto-Rooter did track the revenue generated from the miscellaneous supplies charge. Thus, Roto-Rooter itself dealt with the miscellaneous supplies charge on a class-wide basis as opposed to an individual customer basis. Whether this charge was unrelated to the supplies used and was instead part of a profit scheme can be determined with common proof. Further, even if the majority is correct that individual damage calculations are necessary, "[a] trial court should not dispose of a class certification solely on the basis of disparate damages." Ojalvov. Board of Trustees (1984), 12 Ohio St.3d 230, 232.
 {¶ 37} Roto-Rooter cites to this court's decision in Hoangv. E*Trade Group Inc., 151 Ohio App.3d 363, 2003-Ohio-301, in which we found class certification was not appropriate because issues relating to liability as to each individual plaintiff could not be determined on a class-wide basis in a single adjudication. In Hoang the plaintiff asserted E*Trade had allegedly promised to provide continuous and/or reliable trading services and that E*Trade failed to provide such service on account of various system interruptions. Id. Because consideration of which E*Trade customers were injured by an E*Trade interruption was required, we determined class certification was inappropriate. Id.
 {¶ 38} The majority finds that Hoang is analogous to this case upon its view that a case-by-case analysis of each service call is required. I disagree and believe the facts of Hoang are distinguishable from this case because Hoang did not involve allegations of a common profit scheme that affected the entire class. Unlike Hoang, this case involves allegations that all members of the class were charged a miscellaneous supplies fee that did not relate to supplies used as part of a common profit scheme. The nucleus of this action involves a standardized practice that was applied to the entire class, and the class members should be allowed to proceed together with their common claims. As stated in Carder Buick-Olds Co. v. Reynolds Reynolds, Inc., 148 Ohio App.3d 635, 648-649, 2002-Ohio-2912:
"Reynolds argues that individual proof would be necessary foreach individual member of the class with respect to damages.While this may be true, we do not find that this is sufficient tobar class certification. Potential divergence in damages is afactor that can be considered under the predominance element, butit cannot alone prevent the court from certifying the class.Vinci v. Am. Can Co. (1984), 9 Ohio St.3d 98, 9 Ohio B. 326,459 N.E.2d 507, paragraph three of the syllabus. This is truebecause no matter how individualized damages are, liability canstill be tried as a class. Lowe v. Sun Refining Marketing Co.(1992), 73 Ohio App.3d 563, 572, 597 N.E.2d 1189."
 {¶ 39} As the court further explained:
"Generally, courts have found that when a common fraud isperpetrated on a group of plaintiffs, those plaintiffs should beable to pursue the claim without focusing on questions affectingindividual members. Cope, 82 Ohio St.3d at 430. In this regard,fraud cases that involve a single underlying scheme and commonmisrepresentations or omissions across the class are particularlysubject to common proof. Id. at 432. Once the plaintiffestablishes that there are common misrepresentations or omissionsaffecting all class members, a class action can be certifiednotwithstanding the need to prove reliance. Hamilton,82 Ohio St.3d at 83-84."
 {¶ 40} Carder Buick-Olds Co., 148 Ohio App.3d at 646.
 {¶ 41} Roto-Rooter also claims individual inquiries are required with respect to the representations made to each customer and with respect to the elements of reliance and causation. Linn's claim is primarily based on the uniform nature of the alleged misrepresentation created by the preprinted miscellaneous supplies charge.
 {¶ 42} Ohio courts have recognized that class action treatment is appropriate in cases where the claims arise from standardized forms or routine procedures, notwithstanding the need to prove reliance. Baughman, 88 Ohio St.3d at 490;Hamilton, 82 Ohio St.3d at 83. In such cases, proof of reliance may be sufficiently established by inference or presumption.Hamilton, 82 Ohio St.3d at 84. As explained in Cope,82 Ohio St.3d at 436:
"[I]t is not necessary to establish inducement and relianceupon material omissions by direct evidence. When there isnondisclosure of a material fact, courts permit inferences orpresumptions of inducement and reliance. Thus, cases involvingcommon omissions across the entire class are generally certifiedas class actions, notwithstanding the need for each class memberto prove these elements."
 {¶ 43} In light of the foregoing, I would conclude that the trial court did not abuse its discretion in finding common questions of fact predominate over individual ones. I would overrule Roto-Rooter's second assignment of error.
 {¶ 44} Because I find common questions of fact do predominate, I shall address Roto-Rooter's remaining assignments of error. Roto-Rooter's first assignment of error provides as follows:
 {¶ 45} "The trial court erred in finding common questions of law predominate over individual questions."
 {¶ 46} The trial court certified a multi-state class with members "who were charged a miscellaneous supplies charge in connection with services provided by a Roto-Rooter company-owned store during the period of October, 1999, through July 1, 2002."
 {¶ 47} Roto-Rooter argues that the circumstances of this case would require the fact finder to apply the law of 35 different states and that because there are numerous variances in the applicable laws of these states, the trial court erred in certifying the multi-state class. Within this argument, Roto-Rooter asserts the trial court erred in concluding that Ohio law applies to all claims in this case and that no conflict exists in the laws of the 35 states in which putative class members reside.
 {¶ 48} Linn argues that the trial court correctly found Ohio law can be applied because there is no actual conflict among the consumer protection, fraud, and unjust enrichment laws of the jurisdictions. I disagree.
 {¶ 49} In Duvall v. TRW, Inc. (1991), 63 Ohio App.3d 271,276, we held:
"To establish commonality of the applicable law, nationwideclass action movants must creditably demonstrate, through an`extensive analysis' of state law variances, `that classcertification does not prevent insuperable obstacles.' Walsh v.Ford Motor Co. (C.A.D.C. 1986), 807 F.2d 1000, 1017, quotingIn re School Asbestos Litigation (C.A. 3, 1986), 789 F.2d 996.See, also, Gorsey v. I.M. Simon, Co. (D.Mass. 1988),121 F.R.D. 135."
 {¶ 50} In this action, Linn filed a supplemental memorandum regarding the application of Ohio law. Linn claimed there was no material conflict between Ohio law and the laws of the 34 other states encompassed by the class definition. Attached to the memorandum was an overview of the laws of these states. However, this cursory overview provided a comparison of the laws and did not detail an extensive analysis explaining state law variances.
 {¶ 51} Other jurisdictions which have addressed certification of a nationwide class action involving consumer fraud and unjust enrichment claims have found such litigation is not manageable because of the considerable variation in state laws. See, e.g.,In re Bridgestone/Firestone, Inc. (7th Cir. 2002),288 F.3d 1012 (denying nationwide class certification because variances in consumer protection and fraud laws rendered class unmanageable);Block v. Abbott Laboratories (N.D. Ill. 2002), Case No. 99 C 7457 (finding nationwide class certification improper recognizing "[a]cross the country, states have enacted consumer protection statutes which vary on a wide range of important issues, including subtleties in standards of proof, procedure, and remedies"); Lyon v. Caterpillar, Inc. (E.D. Pa. 2000),194 F.R.D. 206 (rejecting nationwide certification, finding consumer fraud laws of the various states are not uniform and management problems are likely to arise from the need to determine and apply the various consumer fraud acts); Lilly v. Shaughnessy (N.D. Ill. 2002), Case No. 00 C 7372 (finding nationwide class certification was improper because the laws of unjust enrichment vary from state to state and require individualized proof of causation and certification of consumer fraud claims is unmanageable); Tylka v. Gerber Products Co. (N.D. Ill. 1998),178 F.R.D. 493 (refusing to certify nationwide class involving consumer fraud claims because of nuances and differing standards of proof, procedure, substance, and remedies).
 {¶ 52} In Lyon, the court recognized there is almost universal reluctance to certify such class actions based on the various states' consumer fraud acts. Lyons, 294 F.R.D. at 219, quoting John S. Kiernan, Michael Potenza, Peter Johnson (1998), Developments in Consumer Fraud Class Action Law, 537 PLI/PAT 237, 279 (article finding conduct that is actionable under various consumer fraud acts varies considerably). As stated by one court, "[s]tate consumer-protection laws vary considerably, and courts must respect these differences rather than apply one state's law to sales in other states with different rules." In the Matterof: Bridgestone/Firestone, Inc., 288 F.3d 1012 at 1018.
 {¶ 53} Upon review of the above authority, I would find the trial court erred in finding there was no actual conflict between the law of Ohio and the law of the other jurisdictions. Nevertheless, Linn argues that even if there is an actual conflict among the laws of the jurisdictions, under Ohio's choice of law rules, Ohio law would apply on a class-wide basis. Again, I disagree.
 {¶ 54} It is well established that, before a court may apply the law of its state to out-of-state plaintiffs, the "[s]tate must have a significant contact or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair." PhillipsPetroleum Co. v. Shutts (1985), 472 U.S. 797, 818, quotingAllstate Ins. Co. v. Hague (1981), 449 U.S. 302, 313. InMorgan v. Biro Mfg. Co. (1984), 15 Ohio St.3d 339, 342, the Ohio Supreme Court set forth the following factors to be considered in determining which state law controls:
"(1) the place of the injury; (2) the place where the conductcausing the injury occurred; (3) the domicile, residence,nationality, place of incorporation, and place of business of theparties; (4) the place where the relationship between theparties, if any, is located; and (5) any factors under Section 6of 1 Restatement of the Law 2d, Conflict of Laws 10, which thecourt may deem relevant to the litigation. * * *"[5]
 {¶ 55} The only contacts this case has with Ohio are that (1) Roto-Rooter's principal place of business is located in Ohio, (2) Roto-Rooter's alleged course of conduct causing injury emanated from Ohio, and (3) some putative class members may reside in Ohio. On the other hand, contacts outside of Ohio include the following: (1) states where the majority of putative class members reside; (2) states where the alleged misrepresentations were received and wrongful conduct occurred; (3) states where the contracts were entered; (4) states where the services were rendered; and (5) states where the injury to the putative class members occurred.
 {¶ 56} In considering other factors relevant to the application of Ohio law to the various jurisdictions, I find that while the laws of each state have similar purposes, each state nonetheless has an interest in applying its own laws to protect its residents from consumer practice violations, fraud, and unjust enrichment. Indeed, state consumer protection acts are designed to protect the residents of the states in which they are promulgated, and to ignore the variations in these laws would run contrary to state choice of law principles. See Lyon,194 F.R.D. at 216-217. Considering the above factors, I do not believe that Ohio has such significant contacts such that choice of its law is neither arbitrary nor fundamentally unfair. Because I would find Ohio law may not be uniformly applied to all putative class members, I would find that the laws of the various states must be applied.
 {¶ 57} Returning to the analysis under Civ.R. 23(B)(3), I am not satisfied that common questions of law will predominate over individual issues of law as to the multi-state class. Moreover, because of the widespread reluctance to certify nationwide class actions involving consumer protection, fraud, and unjust enrichment claims, and due to the variances in these laws which would render a nationwide class unmanageable, I would conclude the trial court abused its discretion in certifying the class which entails litigants from 35 states.
 {¶ 58} Nevertheless, because failure to certify a class would most likely render individual actions in this case uneconomical for the purported class members to pursue, consideration should be given to whether class certification remains appropriate for all class members who reside in Ohio.
 {¶ 59} Here, all Ohio class members present common legal claims of fraudulent misrepresentation, fraudulent concealment, unjust enrichment, and violations of the CSPA. These common claims stem from Roto-Rooter's use of a preprinted miscellaneous supplies charge and its routine practices with respect to the charge. I would find common issues of law as to the Ohio class members predominate over individual questions.
 {¶ 60} Accordingly, I believe Roto-Rooter's first assignment of error should be sustained as to the multi-state class and overruled as to the Ohio class members.
 {¶ 61} Roto-Rooter's third assignment of error provides as follows:
 {¶ 62} "The trial court erred in finding a readily identifiable class exists."
 {¶ 63} The Ohio Supreme Court, in Hamilton, stated that the "readily identifiable class" requirement "will not be deemed satisfied unless the description of [the class] is sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member."Hamilton, 82 Ohio St.3d at 72, citing 7A Charles Alan Wright, Arthur R. Miller and Mary Kay Kane, Federal Practice and Procedure (2Ed. 1986) 120-121, Section 1760. The focus of a trial court in determining whether a class is readily identifiable is "whether the means is specified at the time of certification to determine whether a particular individual is a member." Id. at 73. Thus, the class definition must be defined so as "to permit identification with a reasonable effort." Warner v. WasteManagement, Inc. (1988), 36 Ohio St.3d 91, 96.
 {¶ 64} Roto-Rooter argues that the class is overbroad because it included Roto-Rooter customers who have no viable claim and were not harmed. This is not the appropriate inquiry in determining a readily identifiable class.
 {¶ 65} In both Washington, supra, and Hamilton, supra, a readily identifiable class was found where the proposed classes were defined in terms of the charges imposed on customers. As the court stated in Hamilton:
 "The focus at this stage is on how the class is defined. `Thetest is whether the means is specified at the time ofcertification to determine whether a particular individual is amember of the class.' The question as to whether there arediffering factual and legal issues `does not enter into theanalysis until the court begins to consider the Civ.R. 23(B)(3)requirements of predominance and superiority.'"
 {¶ 66} Hamilton, 82 Ohio St.3d at 74. (Citations omitted.)
 {¶ 67} The class in this case was defined as "All persons and entities who reside in * * * Ohio * * * and who were charged a miscellaneous supplies charge in connection with services provided by a Roto-Rooter company-owned store during the period of October, 1999, through July 1, 2002." This definition would permit identification with reasonable effort. Accordingly, I would find the trial court did not abuse its discretion in finding the class readily identifiable and would overrule Roto-Rooter's third assignment of error.
 {¶ 68} Roto-Rooter's fourth assignment of error provides as follows:
 {¶ 69} "The trial court erred in finding a class action is superior and that the class would be manageable."
 {¶ 70} Roto-Rooter focuses this argument on the manageability problems of a multi-state class. Because I have already addressed certification of the multi-state class, I shall review this argument with respect to the Ohio class members.
 {¶ 71} Civ.R. 23(B)(3) requires a finding that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Certain factors should be considered in determining whether a class action is the superior method including: "(a) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (d) the difficulties likely to be encountered in the management of a class action." Civ.R. 23(B)(3).
 {¶ 72} In considering the requirements of Civ.R. 23(B)(3), the key inquiry "should be whether the efficiency and economy of common adjudication outweigh the difficulties and complexity of individual treatment of class members' claims." Blumenthal v.Medina Supply Co. (2000), 139 Ohio App.3d 283, 292. As stated by the Ohio Supreme Court in Hamilton, "the purpose of Civ.R. 23(B)(3) was to bring within the fold of maintainable class actions cases in which the efficiency and economy of adjudication outweigh the interests of individual autonomy." Hamilton,82 Ohio St.3d at 80. The court further indicated, "this portion of the rule also was expected to be particularly helpful in enabling numerous persons who have small claims that might not be worth litigating in individual actions to combine their resources and bring an action to vindicate their collective rights." Id., citing Wright, Arthur R. Miller Mary Kay Kane, Federal Practice and Procedure (2 Ed. 1986), 518, Section 1777.
 {¶ 73} In the present case, there would appear to be little individual interest in separate claims because limited damages would destroy their economic feasibility. Also, there is no evidence in the record that any class members have filed individual actions. Given the common issues of fact and law with the confinement of the class to the state of Ohio, the efficiency of a single adjudication would be desirable. Further, since the adjudication of this case primarily involves proof of a common scheme involving a preprinted form cost, I do not believe that the difficulties presented would outweigh the efficiency and economy of common adjudication or that the class is unmanageable.
 {¶ 74} Both Hamilton, supra, and Spitzer, supra, like this case, involved a defendant's practice of imposing allegedly improper costs on consumers through a standardized practice involving the use of form contracts. In those cases the Ohio Supreme Court found class action treatment appropriate. As stated in Hamilton, "[t]his appears to present the classic case for treatment as a class action, and cases involving similar claims or similar circumstances are routinely certified as such."Hamilton, 82 Ohio St.3d at 80.
 {¶ 75} Upon my review of the relevant factors, I would conclude that the trial court did not abuse its discretion in finding a class action is the superior method for the fair and efficient adjudication of the controversies. Although there might be some difficulties incurred in the management of the class action, it appears that the trial court gave adequate thought to the problems that might arise and determined that any risk was overpowered by the circumstances supporting class action certification.
 {¶ 76} It should also be noted that the trial court is in the best position to control the scope of the litigation and determine the easiest and most efficient means of disposing of the case. To avoid creating a serious manageability problem, a trial court has the ability to consider the creation of separate classes or subclasses. I would overrule Roto-Rooter's fourth assignment of error.
 {¶ 77} Roto-Rooter's fifth assignment of error provides as follows:
 {¶ 78} "The trial court erred in finding appellee met the minimum requirements to bring a class action under the Ohio Consumer Sales Practices Act."
 {¶ 79} Ohio's CSPA specifically authorizes consumer class actions. R.C. 1345.09(B). R.C. 1345.09 provides, in pertinent part:
"For a violation of Chapter 1345. of the Revised Code, aconsumer has a cause of action and is entitled to relief asfollows:
"* * *
"(B) Where the violation was an act or practice declared to bedeceptive or unconscionable by rule adopted under division (B)(2)of section 1345.05 of the Revised Code before the consumertransaction on which the action is based, or an act or practicedetermined by a court of this state to violate section 1345.02 or1345.03 of the Revised Code and committed after the decisioncontaining the determination has been made available for publicinspection under division (A)(3) of section 1345.05 of theRevised Code, the consumer may rescind the transaction orrecover, but not in a class action, three times the amount of hisactual damages or two hundred dollars, whichever is greater, orrecover damages or other appropriate relief in a class actionunder Civil Rule 23, as amended."
 {¶ 80} Thus, pursuant to R.C. 1345.09(B), certification of a class requires a prior determination that the act or practice violated R.C. 1345.02 or 1345.03. Deegan McGarry v. Med-Cor
(1998), 125 Ohio App.3d 449, 453.
 {¶ 81} In finding that the practice complained of in this case had previously been determined to violate Ohio's CSPA, the trial court relied upon Motzer Dodge-Jeep Eagle v. AttorneyGeneral (1992), 95 Ohio App.3d 183, and Ohio Adm. Code Section109:4-3-05. Motzer involved the use of a standardized "delivery and handling" fee that was not representative of the services and charges provided. Motzer represented to its customers that the fee was a standard fee that was imposed on every car. The court upheld the trial court's finding that the following sales practices in connection with the fee was unfair and deceptive:
"1. A supplier who preprints the amount of a negotiabledelivery and handling fee or other fee covering the supplier'soverhead costs in the price column of its retail buyer's orderform commits an unfair and deceptive act or practice in violationof R.C. 1345.02(A) inasmuch as this manner of presentation of thefee infers that the fee is to be added to the sale price of alltransactions and is not negotiable.
 "2. A supplier who describes a delivery and handling fee orother fee covering the supplier's overhead costs as including`any and all' services and expenses without identifying what, ifany, services or expenses apply to the subject of the consumertransaction commits an unfair and deceptive act or practice inviolation of R.C. 1345.02(A).
 "3. A supplier who prints a boilerplate description ofdelivery and handling services on its retail buyer's order formwhen such services include items subject to the supplier'sreimbursement agreement with the manufacturer commits an unfairand deceptive act in violation of R.C. 1345.02(A)."
Id. at 189.
 {¶ 82} In this case, the trial court found the practice complained of was analogous to the unfair and deceptive practice found in Motzer. The trial court considered the allegations that Roto-Rooter used a preprinted miscellaneous supplies charge without regard to supplies used and implemented the charge to increase the pay of its technicians and Roto-Rooter's profit margin. The trial court noted the allegation that upon customer inquiry, Roto-Rooter's technicians indicated the charge was to cover "the cost of doing business." The trial court found Roto-Rooter used the uniform charge on preprinted forms to cover "overhead costs" without identifying "what if any services or expenses apply."
 {¶ 83} The majority distinguishes Motzer and states thatMotzer did not hold the use of an invoice with a predetermined, preprinted charge alone violates the CSPA. However, it is not the use of the preprinted charge itself that is at issue. It is the use of a fee that is not representative of the services and charges provided.
 {¶ 84} I believe the trial court appropriately applied a liberal construction of Ohio's CSPA and found the practice complained of had been determined to be a violation in Motzer.
As the Motzer court stated:
"We note at the outset that Ohio's Consumer Sales PracticesAct is remedial legislation and is to be construed liberally.Renner v. Procter Gamble Co. (1988), 54 Ohio App.3d 79, 86,561 N.E.2d 959, 965-966. R.C. 1345.02(A) prohibits a supplierfrom committing unfair or deceptive acts in a consumertransaction. The code lists ten examples of deceptive acts orpractices. R.C. 1345.02(B)(1) through (10); see Thompson v. JimDixon Lincoln Mercury, Inc. (Apr. 27, 1983), Butler App. No.CA82-11-0109, unreported, 1983 WL 4353. This court stated inThompson that `[t]his list is not exhaustive and does not limitthe broad scope of the terms "unfair" or "deceptive."'Furthermore, this court recognized that administrative rules wereadopted to aid in interpreting R.C. 1345.02(A). Id.; R.C.1345.05(B)(2)."
Id. at 189-190.
 {¶ 85} I also believe the trial court did not err in finding that the practice complained of amounts to a violation of Ohio's CSPA pursuant to Ohio Adm. Code Section 109:4-3-05. This section provides in relevant part:
"(D) In any consumer transaction involving the performance ofany repair or service it shall be a deceptive act or practice fora supplier to: * * *
 "(7) Fail to disclose upon the first contact with the consumerthat any charge not directly related to the actual performance ofthe repair or service will be imposed by the supplier, * * *
 "(9) Represent that repairs have been made or services havebeen performed when such is not the fact;"
 {¶ 86} In this case the trial court considered that the charge is uniform despite what services are performed. It further considered the complained practice that the charge was imposed to generate profit and cover overhead and was not related to actual services. While Roto-Rooter claims it disclosed the miscellaneous supplies charge up front on the form, this does not in itself establish that the charge was related to actual performance. I see no error with the trial court's conclusion that the alleged practice falls within the purview of Ohio Adm. Code Section109:4-3-05. I would overrule Roto-Rooter's fifth assignment of error.
 {¶ 87} Roto-Rooter's sixth assignment of error provides as follows:
 {¶ 88} The trial court erred by adjudicating the merits improperly at the class certification stage and by misanalyzing the applicable substantive law."
 {¶ 89} Roto-Rooter argues the trial court improperly addressed the merits of this action at the class certification stage and disregarded undisputed class discovery evidence. Roto-Rooter points to statements by the trial court finding (1) Roto-Rooter gives its service technicians a uniform script for oral representations, (2) the miscellaneous supplies charge was unrelated to actual performance and was intended to cover overhead costs and to generate profit, and (3) the miscellaneous charge purports to cover miscellaneous supplies utilized in performing a service when it does no such thing.
 {¶ 90} In deciding the propriety of class certification, the trial court must not consider the merits of the case except as necessary to determine whether the Civ.R. 23 requirements have been met. Ojalvo, 230 Ohio St.3d at 233; Williams v.Countrywide Home Loans, Lucas App. No. L-01-1473, 2002-Ohio-5499. Therefore, a trial court may consider any evidence before it which bears on the issue of class certification. Hansen v. Landaker (Dec. 7, 2000), Franklin App. Nos. 99AP-1191 and 99AP-1192. Also, a trial court must assume the truth of the allegations in the complaint. Pyles v. Johnson
(2000), 143 Ohio App.3d 720, 731.
 {¶ 91} Here, the trial court considered the allegations of the complaint as true, and relied upon the evidence presented to determine if the class certification requirements were met. The court specifically acknowledged that class certification does not focus on the substantive aspects of the case. The court also recognized that questions going to the merits of the case were not to be addressed at the class certification stage. I believe the trial court's statements were consistent with the allegations made and evidence presented and did not amount to an adjudication of the merits of the case. The trial court merely reviewed the available evidence, as it was bound by law to do using a rigorous analysis, and came to its Civ.R. 23(A)-(B) conclusions. Therefore, I would overrule Roto-Rooter's sixth assignment of error.
 {¶ 92} Roto-Rooter's seventh assignment of error provides:
 {¶ 93} "The trial court unconstitutionally applied Ohio law to consumer transactions occurring outside Ohio."
 {¶ 94} I would find this assignment of error is moot, having already determined that the trial court erred in certifying a multi-state class.
It is, therefore, considered that said appellants recover of said appellee the costs herein.
It is ordered that a special mandate be sent to the Cuyahoga County Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
N.B. This entry is an announcement of the court's decision. See App.R. 22(B), 22(D) and 26(A); Loc.App.R. 22. This decision will be journalized and will become the judgment and order of the court pursuant to App.R. 22(E) unless a motion for reconsideration with supporting brief, per App.R. 26(A), is filed within ten (10) days of the announcement of the court's decision. The time period for review by the Supreme Court of Ohio shall begin to run upon the journalization of this court's announcement of decision by the clerk per App.R. 22(E). See, also, S.Ct.Prac.R. II, Section 2(A)(1).
[5] {¶ a} Section 6 of 1 Restatement of the Law 2d, Conflict of Laws 10, provides as follows:
{¶ b} "(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.
{¶ c} "(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include
{¶ d} "(a) the needs of the interstate and international systems; (b) the relevant policies of the forum; (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue; (d) the protection of justified expectations; (e) the basic policies underlying the particular field of law; (f) certainty, predictability and uniformity of result; and (g) ease in the determination and application of law to be applied."